UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-80304-CIV-CANNON/REINHART

NANCY BIHARY,

                      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                      Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 21, 27)

Currently before the Court are the parties' cross-motions for summary judgment (ECF Nos. 21, 27), which the Honorable Aileen M. Cannon has referred to me for appropriate disposition. The issue is whether the record contains substantial evidence to support the denial of disability benefits to Plaintiff Nancy Bihary.

For the reasons stated below, I find that there is substantial evidence to support the denial of disability benefits to Ms. Bihary. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment (ECF No. 21) be **DENIED** and that Defendant's Motion for Summary Judgment (ECF No. 27) be **GRANTED**.[1]

---

[1] Ms. Bihary's motion is accompanied by a Statement of Undisputed Facts (SOF). ECF No. 22. It appears that she filed a SOF because my scheduling order required Plaintiff to file a motion for summary judgment. ECF No. 12. My order should have referenced Rules 5-8 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) of the Federal Rules of Civil Procedure; my order was not intended to invoke the procedures set forth in Rule 56 or Local Rule 56.1, so Defendant was not obligated to respond to Plaintiff's SOF.

## BACKGROUND

On August 27, 2019, Ms. Bihary filed an application for disability insurance benefits and supplemental security income, alleging disability beginning May 28, 2018. R. 78.[2] These claims were denied initially on August 17, 2020, and upon reconsideration on August 13, 2021. Ms. Bihary had a hearing before an Administrative Law Judge (ALJ) on May 17, 2022. *Id.* The ALJ denied Ms. Bihary's application for benefits in a decision dated June 2, 2022 (R. 78-95), and the Appeals Council denied her request for review on November 18, 2022. R. 10-13.

The record contains the following facts adduced from Ms. Bihary's testimony at the hearing, her treatment records, the opinions of state agency consultants, and the testimony of a vocational expert.

*Ms. Bihary's Testimony*

At the time of her hearing on May 17, 2022, Ms. Bihary was 62 years old; she holds a bachelor's degree and a master's degree in communications. R. 109.[3] Ms. Bihary moved from Colorado to Florida a few months before her hearing, driving by herself in a rented car and following directions on a map that someone had prepared for her. R. 108-109, 120. Upon relocating to Florida, Ms. Bihary and her dog took up residence in a house with a roommate. R. 108. Ms. Bihary's dog has health issues that require Ms. Bihary to lift him; the dog weighs approximately 30 pounds, which she described as "too heavy" for her. R. 108, 114. In Florida, Ms. Bihary lives

---

[2] This citation is to the record of the administrative proceeding filed at ECF No. 6.

[3] Ms. Bihary was 58 years old at the alleged onset of her disability.

approximately 13 minutes from the beach; she walks and bicycles to the beach.  R. 109.  She also walks to the grocery store to do her food shopping.  R. 118.

When asked by the ALJ to explain what has prevented her from working since 2018, Ms. Bihary stated: "I have . . . trouble focusing, and I get angry when I -- when people tell me what to do and boss me around.  I had two concussions in Hawaii.  I think that could've been the cause of my -- some of my injuries . . . I segue conversations.  I'm all over the place sometimes . . . there's just no focus when I'm talking with people I work with, or socializing.  Then, if I get highs, I'm, you know, I'm grandiose . . . I'm an up-and-down person.  I get lows as well . . . nothing bad."  R. 109-110, 124.  Ms. Bihary testified that she suffers from "irrational decision-making," that her short-term memory is poor, and that it is difficult for her to follow instructions and stay "on task."  R. 121-22, 131-32.  She testified that she "cannot deal with the public" because she has "anger issues" and that she "can't sit still" for more than four hours because she "get[s] antsy."  R. 127.  Ms. Bihary testified that living with a roommate is "not the ideal situation" and that when they argue, Ms. Bihary "ha[s] to walk away."  R. 113.

Ms. Bihary worked at Sea World in California from 2013 – 2017 as a fish attendant/feeder.  R. 115, 405.  She testified that she quit that job because of a heart condition and moved to Hawaii.  R. 115-16, 385.  Although Ms. Bihary's cardiologist did not tell her to quit her job at Sea World, Ms. Bihary felt it was causing her stress and that she needed a change in lifestyle.  *Id.*  However, Hawaii "wasn't as relaxing as [she] thought it was going to be."  *Id.*  Ms. Bihary lived in Hawaii until 2018.  R.

110.  While there, she worked as a group leader for the YMCA until the onset of her alleged disability.  R. 405.  After that, Ms. Bihary worked briefly for the Humane Society in Hawaii, but "walked off" the job because "they lied to me, and I didn't like how they were treating the animals."  R. 110, 380.  According to Ms. Bihary, her "biggest reason" for leaving the Humane Society was that they euthanized approximately 20 cats per week and "the sadness was overwhelming."  R. 383.  In 2019, Ms. Bihary worked briefly as a dietary aide at an assisted living facility, but she also "walked off that job" because "one of the ladies was in my face all picking on me . . ."  R. 111, 125, 380.

In a Function Report Ms. Bihary submitted to the Social Security Administration in 2020, she stated that if she "get[s] too stressed it is a good possibility my heart will eventually go into SVT [supraventricular tachycardia]" which causes her heart rate to rise and makes her feel light-headed.  R. 418.  On the Function Report form, Ms. Bihary described an SVT occurrence she experienced while working at Sea World.  *Id.*  She told co-workers that she needed medical attention because her heart rate was high and she felt dizzy, but by the time the ambulance came "it was already subsiding."  *Id.*  Ms. Bihary detailed her activities on the Function Report to include shopping with a friend, taking her dog to the park, going to the library and church, reading, going to the YMCA with friends multiple times a week, going to brunch with friends, grocery shopping, browsing at thrift stores, taking public transportation, going to a friend's house for dinner, doing laundry, washing

dishes, and housecleaning for one hour each week on her hands and knees.  R. 422-25.

Ms. Bihary also testified that she has pain in her lower back and it feels "all kinked up," that she has arthritis in her knee and "one flat foot," that she has black spots in her vision, and that she experiences shortness of breath when she "walk[s] too much" or "go[es] up the stairs."  (R. 127-30).

*The ALJ's Assessment of Ms. Bihary's Medical Records and the State Consultants' Opinions, and RFC Determination*

The ALJ found that Ms. Bihary had the following severe impairments: cardiac dysrhythmias; traumatic brain injury; neurocognitive disorder; and bipolar disorder. R. 81.  The ALJ also found that Ms. Bihary had the following medically determinable, but non-severe impairments: degenerative disk disease (DDD); degenerative joint disease (DJD); and disorders of vision.  *Id.*  Upon considering Ms. Bihary's claims, the medical records, and opinions of the medical consultants, the ALJ concluded that none of Ms. Bihary's severe physical impairments met the level of severity required by the SSA's Listing of Impairments so as to render her disabled.  R. 82.

With regard to Ms. Bihary's cardiac dysrhythmias, the ALJ noted that the relevant SSA Listing is 4.05, "[h]owever, the claimant's heart concerns fail to meet or medically equal this listing, given the absence of episodic cardiac syncope or near syncope [loss of consciousness] in the record."  R. 82.

Similarly, the ALJ found that Ms. Bihary's mental impairments failed to meet the criteria in the relevant Listing of Impairments.  The ALJ applied the "paragraph

B" criteria from Section 12.00 of the Listing of Impairments, which represent the four broad areas of mental functioning a person uses in a work setting.

In the area of understanding, remembering, or applying information the ALJ found mild limitation, based on Ms. Bihary's allegations of short-term memory problems, and neurocognitive laboratory showing low-average performance on delayed memory test (list of words).  R. 83.  The ALJ noted, however, that the same laboratory testing revealed high average performance on immediate and delayed memory tests relating to geometric figures.  *Id.* (citing Exhibit 17F).

In the area of interacting with others the ALJ found moderate limitation, based on Ms. Bihary's allegations of irritability, worsening anxiety, and mental status findings of abnormal mood/affect.  R. 83 (citing Exhibit 25F/6-8).  According to the ALJ, "[a]ny contention of greater limitation in this area is undermined by the claimant's function reports, which specifically endorse regular socialization with two friends; and participation in social activities[,] . . . use of public transit, and . . . sharing a house . . . with another individual."  *Id.* (citing Exhibits 5E; 10E).

In the area of maintaining concentration, persistence, and/or pace, the ALJ found moderate limitation, based on Ms. Bihary's allegations of reduced focus and easy distraction (e.g., Exhibit 9F/1), signs of short attention span, and distractibility seen on some mental status examinations of record (e.g., Exhibit 9F/8-10, 32-33).  R. 83.  The ALJ observed that a higher limitation was not warranted given Ms. Bihary's activities of daily living which included living independently, taking care of a pet, reading, and performing household chores.  R.83 (citing Exhibits 5E; 10E).

In the area of adapting and/or managing oneself, the ALJ found mild limitation, based on Ms. Bihary's activities of daily living and the conservative treatment of her psychological issues with medications and psychotherapy. R. 83 (citing Exhibits 9F; 25F).

The ALJ concluded that "Because the claimant's mental impairments do not cause extreme limitation in at least one of the above [four] areas, or marked limitation in at least two, . . . the 'paragraph B' criteria have remained unsatisfied." R. 83.

The ALJ also found that Ms. Bihary did not satisfy the "paragraph C" criteria in the SSA's Listing of Impairments because the medical records did not establish the presence of a "serious and persistent" mental disorder. In making this finding, the ALJ noted that Ms. Bihary lived independently as opposed to in any sort of assisted-living facility or other highly-structured environment and that her mental impairments have been treated conservatively with psychotropic medications and psychotherapy. R. 84 (citing Exhibits 9F; 25F). Moreover, Ms. Bihary's function reports "reveal her to not only be self-sufficient within her own home, but also in the outside world," as demonstrated by Ms. Bihary's performance of household chores like meal-preparation, cleaning, doing the laundry, as well as outside-the-home functions such as using public transit, shopping in stores, using money, and attendance at many doctor's appointments in public offices. *Id.*

The ALJ concluded that because neither the "paragraph B" nor "paragraph C" criteria of the cited mental listings were satisfied for the period at issue, and because no qualified medical source has opined that these impairments medically equal any

listing, Ms. Bihary's mental impairments fail to meet or medically equal any listings, whether considered alone or in combination with the claimant's other impairments. R. 84.

The ALJ then considered the extent to which Ms. Bihary claimed her impairments restricted her abilities. The ALJ concluded that Ms. Bihary's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the evidence in the record. R. 85-86. The ALJ noted that despite Ms. Bihary's alleged disabling cardiological/cardiovascular concerns, her numerous cardiovascular laboratories of record reflect only mild-moderate findings. R. 86 (citing Exhibits 3F/8, 19, 27; 24F/60-62, 76-77, 98). Similarly, although Ms. Bihary alleged a history of TBI/concussions with active neurocognitive and psychological dysfunction, her brain MRI showed only nonspecific white-matter signal abnormalities. R. 86 (citing Exhibit 5E/5). And, although Ms. Bihary alleged chronic dizziness, and trouble balancing/standing/walking, in January 2020, she reported having only a few episodes of dizziness in the preceding two years (Exhibit 13F/1-3) and specialized neurological assessments found her to have an independent, if not entirely normal gait. R. 86-87 (citing Exhibits 4F/6; 22F/11, 18). With regard to Ms. Bihary's allegations of extreme irritability, obsessive-compulsive behaviors, and inability to tolerate criticism, the ALJ noted that her function reports revealed large amounts of social activity. R. 87.

The ALJ concluded that Ms. Bihary has the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c).

As such, the claimant can lift and/or carry up to 50 lbs. occasionally and up to 25 lbs. frequently; stand and/or walk for a combined total of up to 6 hours per 8-hour workday; and sit for a total of up to 6 hours per 8-hour workday – to the extent consistent with the following additional functional findings. The claimant cannot work in environments exposing her to concentrated cold/heat, or to any degree of unprotected heights, or fast, moving machinery; and she can never climb ladders. She can frequently, but not constantly interact with coworkers, supervisors, and/or the public. She can accept constructive criticism, maintain appropriate work attire and hygiene, and perform simple work for 2 hours at a time. She will do best if able to work independently after receiving instruction; she should not be assigned teamwork. Within the scope of these limitations, she can tolerate changes in routine work environment, travel independently, avoid workplace hazards, sustain a routine, and maintain attendance.

R.84-85.  The ALJ explained her RFC assessment as follows:

Due to a combination of cardiac dysfunction and sequelae of TBI, as evidenced by historical complaints of weakness, and substantial laboratory evidence of multiple cardiologic abnormalities, together with neuropsychological evaluation showing mild deficiencies of cognition, the claimant is limited to medium work. Because of her cognitive dysfunction and SVT, she is further precluded from exposure to hazards, or use of ladders. Due to a combination of neurologic and psychological dysfunction, she is limited to simple routine tasks with no more than frequent social interaction.

R. 91.

The ALJ found the objective medical evidence, specifically numerous cardiological and neuropsychological laboratories, provided support for her RFC assessment.  R. 87.  For example, an echocardiography in August 2018 revealed only mild mitral valve thickening and moderate aortic regurgitation. A Carotid Duplex Scan performed the same year similarly revealed only minimal stenosis (1-19%) of the proximal internal carotid artery, bilaterally (Exhibit 7F/19); and Ms. Bihary was able to achieve normal maximal exercise stress-tolerance on contemporaneous

treadmill stress testing.  R. 87 (citing Exhibit 7F/27).  Another echocardiography performed in September 2021, showed normal left ventricular size and function, and a Carotid Doppler administered around the same time revealed no evidence of flow-limitation stenosis and only minimal atherosclerotic plaque (Exhibit 24F/76-77), while contemporaneous coronary angiogram showed only mild abnormalities (Exhibit24F/98).  R. 87-88.  The ALJ noted that Ms. Bihary's cardiovascular concerns have been treated "highly conservatively," largely with medications for chest pain/angina (e.g., Exhibits 26F/62), elevated cholesterol, and over-the-counter pain relievers (e.g., Exhibits 15F/8; 28F/3).  R. 88.

With regard to Ms. Bihary's cognitive complaints, neuropsychological laboratory testing yielded an overall assessment of only mild cognitive impairment (Exhibits 17F; 18F), and an MRI of her brain revealed no acute issues, no vestibular schwannoma/acoustic neuroma, and only nonspecific white-matter signal abnormalities (Exhibit 5E/5).  R. 88.  Moreover, neurological components of Ms. Bihary's physical examinations were also largely within normal limits (e.g., Exhibits 8F/4; 13F/2-3, 5-6; 14F/18; 21F/4), even during more thorough evaluations for facial drooping, extremity usage, cranial nerve function, sensation, and cerebellar function (e.g., Exhibit 8F/4), and for vestibuloacoustic nerve function (e.g., Exhibit 13F/2-3, 5-6).  R. 88.

A specialized mental status examination in September 2019 was most significant for signs of depressed mood, crying spells, and impairment of recent memory, and attention/concentration (Exhibit 9F/8), and another mental status

examination in late 2019 showed similar disturbances of mood/affect, with additional signs of pressured speech, and flight of ideas (Exhibit 9F/25, 33). R. 88. However, Ms. Bihary reported some improvement in overall mental symptoms with increased dosage of Lexapro (Exhibit 9F/33-34) and in June 2020, she exclaimed "I have a zest for life with Abilify" (Exhibit 25F/158). R. 88.[4] A mental status examination in November 2021 revealed no cognitive abnormalities (Exhibit 25F/6). R. 88.

The ALJ found the August 2020 opinion of state psychological consultant, Cathy Word-Allen, Ph.D., to be unpersuasive due to deficiencies of both support and consistency. R. 89. Dr. Word-Allen found Ms. Bihary to have severe psychological impairments, but based that finding on only a moderate limitation of the "paragraph B" social function. Overall, Dr. Word-Allen found Ms. Bihary to be capable of work with limited complexity and stated the claimant could not work closely with supervisors/coworkers and could tolerate only minimal interaction with the general public. The ALJ found the contention that Ms. Bihary could only perform work of "limited complexity" to lack support, given the existence of a neuropsychological laboratory indicating only mild cognitive impairment (Exhibit 18F) and later mental health records showing improvement with adjusted medications (e.g., Exhibit 25F/158). R. 89. Dr. Word-Allen's limitations on Ms. Bihary's social contact also lacked support given the social activities noted in her function reports (Exhibit 5E) and the ongoingly conservative mental health treatment, with improved mental status examination findings (See Exhibit 25F). R. 89.

---

[4] Doctors later discontinued her prescription for Abilify due to negative side effects. R. 1197.

The ALJ likewise found unpersuasive the August 2021 opinion of state psychological consultant, Ryan Mendoza, Ph.D. based on deficiencies in support and consistency. R. 90-91. Dr. Mendoza found Ms. Bihary to have moderate limitations in "paragraph B" areas relating to concentration/attention and social function, and concluded that she cannot tolerate frequent social interaction. The ALJ determined that this finding was inconsistent with the social activities noted in Ms. Bihary's function reports. *Id.*

The ALJ also found the opinions of state medical consultants Glenn Gade, M.D. and David Braverman, M.D. to be unpersuasive due to deficiencies in support and consistency. R. 89-90. These doctors found that, physically, Ms. Bihary had no exertional limitations but, as the ALJ noted, this conclusion "fail[ed] to fully reflect [Ms. Bihary's] cardiac dysfunction, . . . [her] emergency care for complaints of bilateral lower extremity weakness" and allegations of dizziness. *Id.*

Based on the foregoing, the ALJ determined that Ms. Bihary was not disabled and that she could perform her past relevant work as a Salesperson (Pets & Pet Supplies) and as a Library Clerk. R. 91.[5] The vocational expert testified that both of these jobs are classified as light exertion. R. 92, 134.

*Plaintiff's Claims*

In her motion for summary judgment, Ms. Bihary argues that the ALJ erred in discounting the state consultant's opinions, asking the vocational expert hypothetical questions that did not encompass all of her impairments, and giving too

---

[5] The record revealed that Ms. Bihary worked in the library at Nova Southeastern University from 2008-2011. R. 92, 116.

little weight to Ms. Bihary's degenerative disk disease, lung nodules, dysphagia with stress and sinusitis. ECF No. 21.

## STANDARD OF REVIEW

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir. 1996); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## DISCUSSION

### A.  The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. 20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial

gainful activity. *Id.* Second, the claimant must prove that his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities. . ." *Id.* Third, the ALJ must determine whether the claimant has an impairment that meets or is medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (the "Listings"). *Id.* If the ALJ answers Step Three in the affirmative, the claimant is found to be disabled. *Id.* If the ALJ answers Step Three in the negative, the inquiry continues to Step Four. *Id.*

Before considering Step Four, however, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), meaning his "ability to meet the physical, mental, sensory, and other requirements of work," despite limitations from his impairments. *Id.*; 20 C.F.R. § 404.1545(a)(1), (4). At Step Four, the claimant must prove that, given his RFC, he cannot perform his past relevant work. 20 C.F.R. § 404.1520. If the claimant is successful at the fourth step, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and past work experience, that he is capable of performing other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1560. If the Commissioner successfully shows that the claimant can perform such work, the claimant is determined not to be disabled. 20 C.F.R. § 404.1520.

**B. Is there Substantial Evidence to Support the ALJ's Determination?**

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). I am not convinced that

either situation is present here and so there is no basis for reversing the ALJ's decision.

In her motion, Ms. Bihary does not specify at which of the five steps she believes the ALJ erred. I construe Ms. Bihary's motion as claiming that the ALJ erred in assessing her severe impairments at Step Two, as well as in discounting the opinions of state psychological consultants in assessing Ms. Bihary's RFC. The purportedly inaccurate RFC resulted in a determination at Step Four that Ms. Bihary can still perform her past relevant work – a decision that was also based on allegedly improper hypothetical questions posed to the vocational expert.

### 1. *Ms. Bihary's other physical impairments*

Ms. Bihary claims that the ALJ accorded too little weight to her degenerative disk disease, lung nodules, dysphagia with stress and sinusitis. ECF No. 21 at 10, 15-17. The ALJ's decision reveals that she considered Ms. Bihary's degenerative disk disease and ultimately determined it to be a non-severe impairment because it did not more-than-minimally limit her ability to perform basic work activities. R. 81. This is consistent with the only evidence in the record cited by Ms. Bihary: a hospital discharge report in June 2020 that references a spinal MRI which revealed mild cord compression for which surgical management was not recommended. R. 1040, 1061. In fact, the report explained that although Ms. Bihary was admitted for complaints of bilateral leg weakness, the cord compression discovered did "not necessarily correlate with her symptoms." R. 1040. Rather, the hospital "suspect[ed] her symptoms [were] due to [a] recent increase in [A]bilify." R. 1040. Ms. Bihary does

not cite to any other record evidence regarding her degenerative disk disease that the ALJ "fail[ed] to fully and adequately consider." R. 15.

Likewise, the argument that the ALJ failed to adequately consider Ms. Bihary's lung nodules, dysphagia with stress and sinusitis is without merit. Ms. Bihary references only one CT chest scan in 2021 that showed "stable" and "not suspicious" lung nodules. R. 946. Similarly, Ms. Bihary relies on one fleeting reference to her dysphagia and sinusitis in another medical record. R. 1352. There is no evidence that Ms. Bihary ever claimed that these conditions impaired her ability to perform work activities, so the ALJ was not required to include them in her assessment. Nor does Ms. Bihary explain what functional limitations would result from these conditions, or how her RFC should have been adjusted to account them. *See Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

### 2. *The opinions of the state consultants*

Ms. Bihary claims that the ALJ erred in disagreeing with the state consultants' opinions and "should have assigned more weight to the other professional opinions." ECF No. 21 at 10. It is unclear what "other opinions" she is referring to, but I find that there is substantial evidence to support the ALJ's determination that the state

consultants' opinions were unpersuasive because they were not supported by the record and were, in fact, inconsistent with it.[6]

As an initial matter, I note that the state medical consultants (Dr. Gade and Dr. Braverman) found that Ms. Bihary's impairments required no exertional limitations. The ALJ rejected their opinions because they failed to take into account Ms. Bihary's cardiac dysfunction, complaints of lower extremity weakness and allegations of dizziness. R. 88-90. The ALJ determined that Ms. Bihary's impairments warranted the inclusion of exertional limitations, and the ALJ did, in fact, include them in her RFC assessment. In her motion, Ms. Bihary agrees with the ALJ's rejection of these doctors' opinions. ECF No. 21 at 11-12.[7]

---

[6] Ms. Bihary's motion also claims that the ALJ erroneously "gave significant weight to the opinions of non-examining physicians." ECF No. 21 at 16. It is unclear what "non-examining physicians" she is referring to, other than the state consultants. Assuming she is referring to the state consultants, however, this argument directly contradicts Ms. Bihary's claim that that ALJ erred in discounting the state consultants and it is belied by the ALJ's finding that the opinions of the consultants were unpersuasive.

The motion also cites outdated case law for the proposition that a treating physician's opinion is entitled to more weight than other physician opinions. ECF No. 21 at 16. "In March 2017, 20 C.F.R. § 404.1527 was replaced by 20 C.F.R. § 404.1520c. Notably, the changes dispensed with the 'treating physician's rule' and no longer require the ALJ to give controlling weight to treating physicians' opinions." *Jandasek v. Kijakazi*, No. 22-61729-CIV, 2023 WL 5916499, at *3, n.1 (S.D. Fla. July 26, 2023), report and recommendation adopted, No. 22-61729, 2023 WL 5523973 (S.D. Fla. Aug. 28, 2023).

[7] Ms. Bihary makes the conclusory allegation (without any factual development) that the ALJ "erred by minimizing [her] cardiac and other physical issues." ECF No. 21 at 16. This claim is belied by the ALJ's decision to disregard the opinions of Drs. Gade and Braverman because they ignored Ms. Bihary's cardiac dysfunction, complaints of lower extremity weakness, and allegations of dizziness; the argument is further belied by the ALJ's decision to include exertional limitations in the RFC.

As for the state psychological consultants (Dr. Word-Allen and Dr. Mendoza), Ms. Bihary argues that the ALJ should have credited their opinions that Ms. Bihary "cannot handle frequent social contact." ECF No. 21 at 11. However, I find there is substantial evidence in the record to support the ALJ's conclusion that these consultants' opinions were unpersuasive.

Specifically, the ALJ explained that their opinions lacked support in the record because of "the presence of [a] neuropsychological laboratory indicating [that Ms. Bihary had] only mild cognitive impairment." R. 89 (citing Exhibit 18F). Moreover, Ms. Bihary's later mental health records "show[ed] improvement" once her medications were adjusted. *Id.* (citing Exhibit 25F/158). The state psychologists' assessments were further undermined by Ms. Bihary's function report in February 2020 which listed her varied social activities (Exhibit 5E), and the fact that the record indicated improved mental status examination findings with only conservative mental health treatment. *Id.* (citing Exhibit 25F).

Ms. Bihary suggests that her "occasional[] interact[ions]" with "three friends" should not overshadow her alleged "inability to manage relationships in and out of the workplace." ECF No. 21 at 11. However, the record is replete with instances of Ms. Bihary's ability to socialize and function in public; these facts support the ALJ's decision to discount the psychological consultants' opinions and support the ALJ's RFC determination that Ms. Bihary can tolerate frequent interaction with people.

Ms. Bihary argues that the ALJ should have credited Dr. Mendoza's assessment of her limitations because it is "most accurate" (*id.* at 12), but Dr.

Mendoza's assessment of the "paragraph B" criteria is the same as the ALJ's: that Ms. Bihary has moderate limitations in the areas relating to concentration/attention and social function. R. 90. Neither Dr. Mendoza nor the ALJ's determination shows that Ms. Bihary has a mental impairment that causes an extreme limitation in one of the four areas of mental functioning or a marked limitation in at least two of the areas, and thus, even Dr. Mendoza's assessment failed to establish that Ms. Bihary's neurological/psychological impairments rendered her disabled. R. 83. To the extent Ms. Bihary claims that the ALJ should have incorporated the limitations recommended in Dr. Mendoza's opinion into the RFC, I find that based on the record set forth above, there was substantial evidence to support the ALJ's finding that Ms. Bihary was capable of frequent contact with co-workers, supervisors, and/or the public.

According to Ms. Bihary, "perhaps the single biggest mistake" the ALJ made was relying on Ms. Bihary's statement that she had a "zest for life" after being prescribed Abilify. ECF No. 21 at 10-11 (citing R. 88). Ms. Bihary argues that the ALJ should not have relied on this statement to conclude that "Ms. Bihary's mental health issues can be controlled with a pill" because the prescription was subsequently discontinued when Ms. Bihary experienced negative side effects. *Id.* However, the ALJ's finding that Ms. Bihary's mental health issues were being adequately managed with adjustments to her medications was also based on record evidence that Ms. Bihary reported improvements when she was prescribed an increased dosage of Lexapro (R. 88 citing Exhibit 9F/33-34), and her reports of a "stable and improved

mood" when taking Wellbutrin (R. 91 citing Exhibits 6A/14; 8A/14). Again, there is substantial evidence in the record to support the ALJ's finding.

### 3. *The hypothetical questions the ALJ posed to the vocational expert*

Ms. Bihary claims that the ALJ erred because she posed hypothetical questions to the vocational expert that did not encompass all of her impairments. ECF No. 21 at 13-15, 17-18.[8] Again, Ms. Bihary argues that because the record contains instances of her occasionally having conflicts with other people, this demonstrates that she cannot tolerate frequent contact with co-workers, supervisors and the public, and the ALJ should have included this limitation in the questions posed to the vocational expert. Notably, the ALJ did include this limitation in questioning the expert. R. 136-139 (asking the expert how "brief, incidental public contact" and "[o]nly brief occasional contact with coworkers and supervisors" would impact claimant's ability to perform her past relevant work).

Nevertheless, the ALJ ultimately concluded that the record evidence supported a finding that Ms. Bihary could tolerate frequent interaction with others, and I find that there is substantial evidence in the record to support the ALJ's RFC determination. Indeed, Ms. Bihary taught children how to feed the fish at Sea World (R. 115) and worked as a group leader for the YMCA in Hawaii (R. 405); she goes to the library and church, takes public transportation, goes shopping, goes to the YMCA

---

[8] To the extent the motion contends that Ms. Bihary's physical limitations prevent her from performing the medium level jobs listed by the vocational expert during her testimony (*id.* at 7, 13-14), this argument is a red herring because the ALJ ultimately determined that Ms. Bihary can perform her past relevant work, which is categorized as light work.

with friends multiple times a week, walks her dog with a friend, goes to brunch with friends, and visits friends' houses for dinner. R. 422-25. And although Ms. Bihary contends that her work history shows that she "cannot interact civilly with co-workers" or handle criticism from supervisors (ECF No. 21 at 11, 13; R. 111, 116, 124-25), the record does not support this characterization. In fact, Ms. Bihary has stated that while she "will not take a boss being mean or nasty" to her, she "get[s] along" fine with authority figures when they are nice to her. R. 427. And contrary to Ms. Bihary's claim that she "cannot deal with the public" because she has "anger issues" (R. 127), the record suggests that Ms. Bihary is capable of diffusing a confrontation, such as when she got into an argument with her roommate and decided to just "walk away." R. 113. Finally, the record reveals that Ms. Bihary left previous jobs for reasons having nothing to do with her purported inability to manage work relationships. For example, she left Sea World and moved to Hawaii for a change in lifestyle (R. 385) and she quit the Humane Society because the euthanization of animals made her sad (R. 383). The totality of the evidence in the record is sufficient for me to find that substantial evidence supported the ALJ's determination that Ms. Bihary is not disabled and that she can perform her past relevant work, including jobs that require frequent interaction with people.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (ECF No. 21), and **GRANT** Defendant's Motion for Summary Judgment (ECF No. 27).

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Aileen M. Cannon, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE AND SUBMITTED** in Chambers this 19th day of February, 2024, at

West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
UNITED STATES MAGISTRATE JUDGE